No. 4:09-cv-40223-JLT

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

DAVID L. FULLER and
BETSY L. FULLER,

*Plaintiffs/Appellants,*

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee for the Registered Holders of
CDC Capital Mortgage Capital Trust 2003-HE4,
Mortgage Pass-Through Certificates, Series 2003-HE4, et al.

*Defendant/Appellee.*

---

On Appeal from the United States Bankruptcy Court
for the District of Massachusetts (Docket No. 08-04058),
Honorable Joel B. Rosenthal, United States Bankruptcy Judge

---

**BRIEF OF DEFENDANT/APPELLEE**

---

David Fialkow (BBO# 666192)
david.fialkow@nelsonmullins.com
Jeffrey S. Patterson (BBO# 671383)
Jeffrey.patterson@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Boston Place
40th Floor
Boston, MA 02108
(617) 573-4700

**Attorneys for Defendant/Appellee**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF ISSUES AND STANDARD OF REVIEW ............................ 1

    I.    Statement of Issues.................................................................. 1

    II.   Standard of Review ............................................................... 2

STATEMENT OF THE CASE .................................................................. 3

    I.    Nature of the Case ................................................................. 3

    II.   Statement of Facts Relevant to Bankruptcy Court Decision and Plaintiff's Appeal ................................................................. 4

        A.    The Plaintiff's Mortgage and Disclosures........................... 4

        B.    The Fullers' Bankruptcy History (relevant to judicial estoppel argument, Part IV, *infra*).............................................. 6

        C.    The Fullers' Rescission Attempt...................................... 8

    III.   Procedural History................................................................. 8

ARGUMENTS AND AUTHORITIES .......................................................... 9

    I.    The Bankruptcy Court Correctly Granted Summary Judgment to Deutsche Bank on the Fullers' Notice of Right to Cancel Claim....... 10

        A.    Notice of Right to Cancel Requirement............................. 11

            1.    Since Federal Law Controls, There is No Reason to Certify Any Questions of Law to the Massachusetts Supreme Judicial Court....................................... 13

        B.    Truth in Lending Background........................................ 14

        C.    The "Objective Reasonableness" Standard ........................ 15

   1. The Fullers Incorrectly Rely on the Hyper-Technical . Standard Use in Other Circuits ............................ 16

 D. Review of Recent Notice of Right to Cancel Cases............... 16

 E. Mass. Federal Court Decisions Also Compel Dismissal......... 18

 F. Framing the Notice of Right to Cancel Issue in this Case...... 19

 G. Omission of the Actual Date That the Rescission Period Expires Does Not Render Notice of Right to Cancel Inadequate........ 20

III. While the Bankruptcy Court Did Not Analyze the Fully and Accurately Completed Noticed of Right to Cancel Signed By The Fullers at Closing, If it Had Done So, It Could Also Have Granted Summary Judgment to Deutsche Bank........................... 23

IV. The Original Lender Made All Required High Cost Mortgage Loan Disclosures.................................................... 25

V. The Bankruptcy Court Correctly Granted Summary Judgment to Deutsche Bank on Plaintiff's G.L. c. 93A Claim Because Deutsche Bank's Rejection of Plaintiff's Rescission Request Was Not "Unfair or Deceptive" .......................................... 27

 A. Refusal to Honor the Fullers' Rescission Request is not Unfair or Deceptive ................................... 27

 B. A Good Faith Dispute Over the Sufficiency of the Notice is Not Grounds for a 93A Claim ...................... 28

 C. The Fullers' 93A Claim is Incorrectly Premised on the Notion That a Rescission Request Immediately and Automatically Terminates the Mortgage ............................. 29

IV. The Bankruptcy Court Could Have (And Perhaps Should Have) Ruled That the Fullers are Judicially Estopped from Asserting Their Claims In this Case Because They Failed to List or Disclose Them During Their First Bankruptcy Case ....................... 30

 A. Judicial Estoppel ...................................... 31

**B.**      **The Fullers' Failure to Disclose Claims** ………………………… **34**

# TABLE OF AUTHORITIES

## Cases

Ajaka v. Residential Funding Corp., 278 Fed. Appx. 916, 917 (11th Cir. 2008) ........... vi, 32

Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) .......... 31

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) ......................... 2, 10, 13

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ............................................. 14

Bohanan v. Bridgestone/Firestone North Am. Tire, LLC, 2007 U.S. Dist. LEXIS 26615, *22
(M.D. Tenn. 2007) ........................................................................................ 32

Browning Mfg., 179 F.3d at 208 ...................................................................... 33

Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) ..................................... 2, 10, 13

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). ........................................ 3, 10, 13

Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). ........................... 3, 10, 13

Cummings v. HMG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001) ................................... 27

Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001). ............................................ 33

Dimare v. Ameriquest Mortgage Co., 2009 Bankr. LEXIS 4208 (Bankr. D. Mass 2009) .... 19

Duclersaint v. Fed. Nat'l Mortgage Ass'n, 427 Mass. 809, 814 (Mass. 1998) ................. 29

Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004) ................... 33

Fidler v. Central Coop. Bank (In re: Fidler), 226 B.R. 734 (Bankr. D. Mass. 1998) .......... 13

Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 61 (1st Cir. 2004) ... 31

Galerie Des Monnaies of Geneva Ltd. v. Deutsche Bank, 55 Bankr. 253 (Bankr. S.D.N.Y.
1985) ......................................................................................................... 32

Howell v. Town of Leyden, 335 F. Supp. 2d 248, 250 (D. Mass. 2004) ......................... 31

In re Desrosiers, 212 B.R. 716, 722 (Bankr. D. Mass. 1997) ................................. 11, 13

Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196,
199-200 (1st Cir. 1996) ............................................................................. 2, 10, 13

Jeffrey v. Desmond, 70 F.3d 183, 186-87 (1st Cir. 1995) ......................................... 32

Kattar v. Demoulas, 433 Mass. 1, 13-13 (Mass. 2000). ............................................ 27

Large v. Conseco Fin. Serv. Corp. 292 F.3d 49, 55-56 (1st Cir. 2002) ......................... 29

Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999) ............................ 31

Mayo v. Key Financial Services, Inc., 424 Mass. 862 (1997) ..................................... 13

McCoy v. Am. Union Boiler Co., 2006 U.S. Dist. LEXIS 14781 (S.D. W. Va. 2006) ....... 32

McKenna v. First Horizon Home Loan Corp., 475 F.3d 418 (1st Cir. 2007) ................... 14

Megitt v. Indymac, F.S.B., 547 F. Supp. 2d 56 (D. Mass 2008) ................................... 9

Melfi v. WMC Mortgage Corp., 568 F.3d 309 (1st Cir. 2009) ............................... passim

Mills v. Andover Bank, 1999 WL 1336606 (Mass. Super. 1999) ................................. 13

Omar v. Wash. Mutual Bank, 2008 U.S. Dist. LEXIS 107284 (D. Mass. Dec. 30, 2008) ... 18

Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988) ........ 31

Palmer v. Champion Mortgage, 465 F. 3d 24 (1st Cir. 2006) ................................. passim

Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) .............. 31

Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc., 989 F.2d 570, 571 (1st Cir. 1993)
..................................................................................................... 32, 33, 34

Quiles v. Wash. Mutual Bank, 2008 U.S. Dist. LEXIS 107279 (D. Mass. Dec. 30, 2008) ... 19

Reynolds v. E-Loan, Inc. 2008 U.S. Dist. LEXIS 94844 (D. Mass. Nov. 18, 2008) .......... 18

RTC Mortg. Trust 1995-S/N2 v. McMahon ex rel. McMahon, 1998 U.S. App. LEXIS 12720 (4th Cir. 1998) ................................................................................................ 32

Salois v. Dime Savings Bank of New York, FSB, 128 F. 3d 20, 25 (1st Cir 1997) ............ 35

Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12 (1st Cir. 2007) ...................... 14

Semar v. Plant Valley Fed. Savings & Loan Assoc., 791 F. 2d 699 (9th Cir. 1986)........... 16

Spence v. Berkshire Life Ins. Co., 561 F. Supp. 2d 126, 130-31 (D. Mass. 2008) ........... 29

Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006) ............................... 31

Sullivan v. Decision One Mortg. (In re Sullivan), 346 B.R. 4, 32 (Bankr. D. Mass. 2006) .. 32

Wells Fargo Bank, N.A. v. Jaaskelainen, 2009 U.S. Dist. LEXIS 52163, (D. Mass. May 28, 2009)................................................................................................................ 29

Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 228 (D. Mass. 1996) ........................... 31

Williamson v. W.E. Lafferty, 698 F. 2d 767 (5th Cir. 1983) ...................................... 16

Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003 .......................... 29

Youngblood Group v. Lufkin Fed. Savings & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)................................................................................................................ 33

## Federal Statutes and Regulations

11 U.S.C. § 521 ..........................................................................................33,34

15 U.S.C. § 1601 ...................................................................................... passim

12 C.F.R. § 226.23 .................................................................................... passim

## State Statutes and Regulations

209 C.M.R. 32.23 (2)(a)................................................................................12

M.G.L. c. 140D, § 10(c) ................................................................................24

M.G.L. c. 93A, § 2......................................................................................27

## Other Authority

Massachusetts Lawyer's Weekly, (May 4, 2009)...................................................4

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

**I.   Statement of Issues:**

Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2003-HE4, Mortgage Pass-Through Certificates, Series 2003-HE4 ("Deutsche Bank"), disagrees with Plaintiffs', David and Betsy Fullers' (the "Fullers") statement of the issues.  Deutsche Bank states that the issues on this appeal are:

1.      With respect to Count I of the Amended Complaint, whether the Bankruptcy Court correctly ruled that the notices of right to cancel, which the Fullers claimed that they received at closing, complied with the requirements of the Truth in Lending Act (and its state law equivalent, the Massachusetts Consumer Credit Cost Disclosure Act) based on the First Circuit's "objective reasonableness" standard?

2.      With respect to Count II of the Amended Complaint, whether the Bankruptcy Court correctly ruled that the Fullers failed to raise any issue of material fact with respect to certain high cost mortgage loan disclosures which were admittedly provided to the Fullers in conjunction with their mortgage?

3.      With respect to Count III of the Amended Complaint, whether the Bankruptcy Court correctly granted summary judgment to Deutsche Bank on Fullers' 93A claim where it found that there was no underlying violation of applicable lending laws?

4.      With respect to all counts in the Amended Complaint, whether the Bankruptcy Court correctly rejected the Plaintiffs' request to certify the issues in this case to the Supreme Judicial Court of Massachusetts where the applicable provisions of the MCCCDA are substantively identical to the federal Truth In Lending Act, where the Bankruptcy Court

1

correctly followed First Circuit precedent, and where there has been no material deviation between the interpretation of the applicable state and federal laws?

5.     With respect to all counts in the Amended Complaint, whether the Bankruptcy Court should have also or alternatively ruled that the Fullers are judicially estopped from asserting their claims as a result of their failure to list or otherwise disclose their claims during a prior Chapter 13 case in which creditors (including the one that they now sued) detrimentally relied on their representation that they had no such claims?

## II.     Standard of Review

Deutsche Bank does not dispute that the District Court's review of the Bankruptcy Court's summary judgment ruling is *de novo*.

Summary Judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "[A] fact is 'material' only if it potentially affects the outcome of the suit and a dispute over it is 'genuine.'" Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996).  There are no issues of material fact and summary judgment should be granted if the opposing party's "evidence is merely colorable, or not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) ("conclusory allegations, improbable inferences, and unsupported conclusions will not suffice [to survive summary judgment."). The Court should ignore bald assertions and mere speculation as well as

allegations "which have been conclusively contradicted by concessions or otherwise." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## STATEMENT OF THE CASE

**I.    NATURE OF THE CASE**

Nearly five years after the Plaintiffs obtained the subject mortgage loan, they filed an adversary proceeding complaint attempting to exercise their statutory three-day right to rescind their mortgage on the grounds that (1) the notices of right to cancel provided at closing were allegedly deficient; and (2) certain high cost mortgage loan disclosures were allegedly not provided. Plaintiffs filed their claims under the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") rather than substantively identical federal Truth In Lending Act because the statute of limitations on both the MCCCDA and TILA had already expired, and only the MCCCDA permits rescission claims after the statute of limitations by means of recoupment. Because the MCCCDA and TILA are substantively identical, Massachusetts state and federal courts have routinely, and without material exception, interpreted the MCCCDA based on federal TILA law.

During the pendency of this case, the First Circuit Court of Appeals decided a factually similar TILA notice of right to cancel case,[1] the outcome of which, at most completely defeats Plaintiffs notice of right to cancel claim, or at a minimum, drastically undercuts the legal basis

---

[1] Melfi v. WMC Mortgage Corp., 568 F.3d 309 (1st Cir. 2009). Coincidentally, counsel for Deutsche Bank was counsel for the holder in Melfi as well.

for Plaintiffs' claims with little room for alternative interpretation.    Despite Plaintiffs' allegations that they did not receive certain high cost mortgage loan disclosures, Plaintiffs actually received each of the statutorily required disclosures, copies of which Plaintiffs admit they signed at their loan closing, and unsigned copies of which they admit receiving.

For these reasons, which are more fully set forth herein, the Honorable Joel B. Rosenthal, the Bankruptcy Judge that the Massachusetts Lawyer's Weekly recently proclaimed as "known for 'whacking lenders' and the lawyers who represent them"[2] decided that the holder of this particular mortgage was entitled to summary judgment on each of Plaintiffs' claims.

## II.    STATEMENT OF FACTS RELEVANT TO BANKRUPTCY COURT DECISION AND PLAINTIFFS' APPEAL[3]

### A.    The Plaintiffs' Mortgage and Disclosures

On or around August 12, 2003, the Fullers refinanced their existing mortgage with Encore Credit Corporation.    (SOF 1-3).    On December 30, 2003, Encore assigned the Mortgage to Deutsche Bank.  (SOF 8).  The assignment was executed on September 6, 2005 and subsequently recorded.  (SOF 9).

At closing, the Fullers signed and acknowledged receiving fully and accurately completed disclosures including the requisite number of copies of the notices of right to cancel and certain high cost mortgage loan disclosures.  (SOF 4).  While the Fullers admit that they signed the fully and accurately completed notices of right to cancel at their loan closing and

---

[2] Reischel, Julia, The 'straight talker' known for 'whacking lenders' and the lawyers who represent them, Bankruptcy Court Judge Joel Rosenthal says he's just doing his job, Massachusetts Lawyer's Weekly, (May 4, 2009).

[3] This case was decided on summary judgment.  The following facts reference Deutsche Bank's statement of material facts and the affidavits and exhibits referred therein (Appeal Record, Document Nos. 18,19 20).  Factual citations herein are made to the statement of facts numbered paragraphs as "SOF#-#."

that their signatures on those documents are authentic, they allege that the notices of right to cancel that they actually received at closing were insufficient because those notices omit the date that the rescission period expired and because the transaction date was off by one day. The so-called "Fullers' version" of the notice is the only version that the Bankruptcy Court analyzed in its summary judgment ruling.  See Bankr. Ct. Memo of Decision (Appeal Record Doc. No. 30). The "Fuller version" of the notices provides:

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien or security interest on your home.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.    the date of the transaction, which is 08/11/03; or
2.    the date you receive your Truth in Lending disclosures; or
3.    The date you received this notice of your right to cancel.

<p align="center">*      *      *</p>

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above)...

With respect to the other relevant disclosures, the Fullers admit that they received various documents from the originating lender prior to closing, at closing, and some time after the closing.  (SOF 5).  The Fullers, however, have no recollection of which documents they received when.  (SOF 5).  The Fullers also admit that the signed some "documents" prior to their closing, but they are unable to identify which documents they signed prior to closing. (SOF 5).  David Fuller admits that he was "not real clear what happened back then" and that he has a problem with "sequence of time."  (SOF 6).  Other than the specific allegations asserted in this case, the Fullers have very little recollection of any of the details surrounding

the closing of the Mortgage. (SOF 7). For example, the Fullers do not recall or know who they dealt with at Encore prior to closing, where their closing took place, who was present at the closing, and even whether an attorney was present. (SOF 7). Despite this lack of information, despite that Plaintiffs' signed each of the high costs loan disclosures at closing, and despite that Plaintiffs actually have in their possession each of the high cost loan disclosures, the Plaintiffs still claim that certain high cost disclosures were not provided.

**B.      The Fullers' Bankruptcy History (relevant to judicial estoppel argument, Part IV, *infra*)**

The Fullers have filed two bankruptcy cases spanning the last five plus years. The Fullers filed their first bankruptcy on September 8, 2004. See In re: Betsy and David Fuller (Bankr. D. Mass., Docket No. 04-45091) (the "First Bankruptcy"). In their required bankruptcy schedules, the Fullers did not disclose any claims with respect to the mortgage or the disclosures associated therewith. (SOF 15). Notably, Section 21 of "Schedule B – Personal Property", entitled, "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to setoff claims. Give estimated cash value of each," is blank. (SOF 15). The Fullers never amended this Schedule B, and obtained the benefit of the automatic stay. (SOF 15).

During the First Bankruptcy, Deutsche Bank filed a motion for relief from automatic stay for the Fullers' failure to make post-petition payments. (SOF 18). Thereafter, Deutsche Bank entered into a Stipulation with the Fullers, whereby Deutsche Bank negotiated its then present right to obtain relief from stay to give the Fullers more time to cure their post-petition arrears. (SOF 18). Under the Stipulation, if the Fullers' failed to make the listed payments,

Deutsche Bank would be entitled to relief from stay upon the filing of an affidavit of non compliance. (SOF 18). The Fullers failed to make monthly payments and the Court granted Deutsche Bank's motion for relief from stay. (SOF 18).

Notwithstanding that it obtained relief from stay, Deutsche Bank continued to work with the Fullers so that they could arrange to refinance the Mortgage with another lender. (SOF 19). While that motion was pending, a dispute arose with respect to the balance and application of payments on the mortgage. (SOF 19). While Plaintiffs ultimately withdrew their motion prior to a scheduled evidentiary hearing, Deutsche Bank refrained from foreclosing while the payment dispute was ongoing.[4] (SOF 19). The Bankruptcy Court dismissed the First Bankruptcy on the Trustee's notice of non-compliance for failure to make payments on November 27, 2007. (SOF 19). At no point during the First Bankruptcy did the Fullers raise or disclose any claims with respect to the origination of their mortgage or the disclosures associated therewith. They did retain their home.

Just three months after the dismissal of the First Bankruptcy, on March 17, 2008, the Fullers filed their current chapter 13 bankruptcy case. See In re: Betsy and David Fuller (Bankr. D. Mass., Docket No. 08-40791) (the "Second Bankruptcy"). The Fullers again failed to disclose or list their claims on their Schedule B, however, they now listed Ocwen Federal Bank as an unsecured credit "from an Adversary Proceeding for an Action in Rescission." (SOF 21). Notwithstanding the fact that the Fullers had already staved off foreclosure since September 2004 (without making any mortgage payments), on April 14, 2008, they prevailed

---

[4] The payment dispute eventually was resolved via a separate adversary proceeding in the Bankruptcy Court, Docket No. 08-04101.

on a motion to impose a new stay on Deutsche Bank. (SOF 21).   They then filed the instant adversary proceeding.

C.    **The Fullers' Rescission Attempt**

On or around March 17, 2008, one day before filing the Second Bankruptcy, the Fullers, via counsel, attempted to rescind their mortgage through written correspondence to Deutsche Bank.  (SOF 22).  The Fullers claimed that they were rescinding their mortgage because certain unidentified loan disclosures were "inaccurate beyond any tolerances permitted by law."  (SOF 22).  On April 1, 2008, the Fullers, again through counsel, sent additional correspondence claiming that their rescission request was also premised on the allegation that "the notices of right to cancel which were provided to the Fullers at closing did not specify the expiration date for exercising their rescission rights."  (SOF 23).  The loan servicer responded on behalf of Deutsche Bank on April 4, 2008, denying the Fullers rescission request because the Fullers did not explain how their disclosures were inaccurate and that they were "unable to confirm [the Fullers] allegation" with respect to the notices of right to cancel because the allegedly deficient notices were not attached to their correspondence.  (SOF 24).   The adversary proceeding ensued.

III.   **PROCEDURAL HISTORY**

The Fullers attenuated bankruptcy history is explained in detail above.   The Fullers filed their adversary proceeding Complaint on April 11, 2008 in Bankruptcy Court given their ongoing Chapter 13 case.  Deutsche Bank moved to dismiss Count I (the notice of right to cancel - CCCDA claim) and Count III (the M.G.L. 93A claim) of the Plaintiffs' three-count complaint on the grounds that the notices of right to cancel allegedly provided to Plaintiffs,

which omitted the three-day rescission deadline, satisfied applicable law.[5]   After hearing Deutsche Bank's motion, the Bankruptcy Court stayed the proceedings on Counts I and III pending a First Circuit Court of Appeals decision,[6] which the parties agreed at the time would be dispositive on the issue in this case.  See Order on Motion to Dismiss dated August 28, 2008 (Document No. 26).  The First Circuit eventually decided the notice of right to cancel issue in a different case, Melfi v. WMC Mortgage Corp., 568 F.3d 309 (1st Cir. 2009), in favor of the lender holding that notices of right to cancel that omit both the date of the transaction and the date the rescission period expired, satisfy the lender's disclosure requirements.

By agreement, the parties conducted discovery on all claims while they waited for the First Circuit to rule on the notice of right to cancel issue.  Notwithstanding that the motion to dismiss was still pending, both parties moved for summary judgment on all claims after the close of discovery.  The Court ultimately ruled on all of the dispositive motions in its Order and Memorandum of Decision dated October 6, 2009.   The Bankruptcy Court granted summary judgment in Deutsche Bank's favor on all counts.   The Fullers appeal.

## ARGUMENT AND AUTHORITIES

The Bankruptcy Court correctly granted summary judgment in Deutsche Bank's favor because the notices of right to cancel provided to the Fullers[7] complied with applicable lending

---

[5] Deutsche Bank did not move to dismiss Count II, which was based on alleged non-disclosure of certain high cost home loan disclosures.

[6] The First Circuit case referenced in the Court's Order is Megitt v. Indymac, F.S.B., 547 F. Supp. 2d 56 (D. Mass 2008).

[7] In reaching its decision, the Bankruptcy Court considered the notices that the Fullers claim that they received.  The 'Fuller notices" left blank the date of the expiration of the three day rescission period.  While Deutsche Bank has in its possession fully executed and correctly completed notices of the right to cancel for the Fullers' loan, the Bankruptcy Court only considered the Fullers' version of the notices (which represented the Fullers' best set of facts), and decided that even those notices satisfied the lending disclosure requirements.  The Bankruptcy Court

laws and the Fullers signed and acknowledged receiving all applicable high cost mortgage loan disclosures.   Summary Judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] fact is 'material' only if it potentially affects the outcome of the suit and a dispute over it is 'genuine.'" Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996).   There are no issues of material fact and summary judgment should be granted if the opposing party's "evidence is merely colorable, or not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) ("conclusory allegations, improbable inferences, and unsupported conclusions will not suffice [to survive summary judgment."). The Court should ignore bald assertions and mere speculation as well as allegations "which have been conclusively contradicted by concessions or otherwise." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).   As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).   In this case, the Fullers have not demonstrated any triable issues of material fact, and the Bankruptcy Court correctly applied applicable lending law to the facts of this case.

## I.   THE BANKRUPTCY COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO DEUTSCHE BANK ON THE FULLERS' NOTICE OF RIGHT TO CANCEL CLAIM (COUNT 1).

### A.   The Notice of Right to Cancel Requirement.

---

never reached Deutsche Bank's arguments as to the correctly and fully completed notices.

Based on well-developed First Circuit notice of right to cancel case law, the notices provided to the Fullers sufficiently disclosed the right to cancel, and the Bankruptcy Court correctly granted summary judgment to Deutsche Bank.   Both state and federal laws give borrowers a three-day right to cancel certain mortgage transaction such as the transaction involved in this case.   See M.G.L. c. 140D, § 10; 15 U.S.C. § 1635(a)   The state statute is commonly referred to as the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA) and the federal statute is commonly known as the Truth In Lending Act (TILA).   Both statutes require a creditor in a non-purchase money mortgage transaction to "clearly and conspicuously" disclose to borrowers that they have the right to rescind their transaction within three business days of the later of "consummation of the transaction or the delivery of the information and rescission forms."   Id.   Other than the applicable statutes of limitations, which are not at issue in this case because both have lapsed,[8] the relevant portions of TILA and the MCCCDA are substantively the same.   See In re Desrosiers, 212 B.R. 716, 722 (Bankr. D. Mass. 1997) ("Because the provisions of CCCDA parallel those of TILA, CCCDA 'should be construed in accordance with federal law.'").   In fact, the MCCCDA was modeled on TILA. Id.

The substantive disclosure requirements under both state and federal law come from the agencies expressly authorized by Congress to promulgate regulations.   The Massachusetts Division of Banks is responsible for the state regulations set forth in 209 C.M.R. 32.23(2)(a), and the Federal Reserve Board is responsible for the federal regulations, which are set forth in

---

[8] While the statute of limitations have lapsed, the MCCCDA allows a borrower to bring a claim after the expiration of the statute of limitations via recoupment.  See M.G.L. c. 140D, § 10(i)(3); see also Fidler v. Central Coop. Bank (In re: Fidler), 226 B.R. 734 (Bankr. D. Mass. 1998) (permitting defensive recoupment MCCCDA action).  This is why Plaintiffs assert this claim under the MCCCDA, but not TILA.

12 C.F.R § 226.23, and commonly referred to as "Regulation Z." Despite the dual state and federal regulatory authority, there is no substantive deviation between the state and federal regulations with respect to notices of right to cancel. As set forth in the chart below, the applicable state and federal regulations are nearly identical:

| 209 C.M.R. 32.23(2)(a) – Mass. Reg. | 12 C.F.R. §226.23 – Regulation Z |
|---|---|
| "The Notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following: | "The Notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following: |
| 1. The retention or acquisition of a security interest in the consumer's principal dwelling. | 1. The retention or acquisition of a security interest in the consumer's principal dwelling. |
| 2. The consumer's right to rescind the transaction. | 2. The consumer's right to rescind the transaction. |
| 3. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business. | 3. How to exercise the right to rescind with a form for that purpose, designating the address of the creditor's place of business. |
| 4. The effects of rescission, as described in 209 CMR 32.23(4). | 4. The effects of rescission, as described in paragraph (d) of this section. |
| 5. *The date the rescission period expires.*" | 5. *The date the rescission period expires.*" |

Due to the identical nature of both the state and federal statutes and their issuing regulations, First Circuit courts look *exclusively* to federal TILA law when deciding notice of right to cancel claims regardless of whether the claim is asserted under the MCCCDA or TILA statutes. See McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007) ("It is, therefore, common ground that the MCCCDA should be construed in accordance with the TILA."); Fidler v. Central Coop. Bank (In re: Fidler), 226 B.R. 734 (Bankr. D. Mass.

1998) (analyzing MCCCDA recoupment claim under TILA even though TILA claim was time barred because "federal court decisions construing TILA are instructive in construing parallel provisions of CCCDA"); In re: Desrosiers, 212 B.R. at 722 ("Because the provisions of MCCCDA parallel those of TILA, MCCCDA 'should be construed in accordance with federal law.'"). Even Massachusetts state courts look to federal TILA law when deciding MCCCDA claims. See Mayo v. Key Financial Services, Inc., 424 Mass. 862 (1997) (relying on federal court decisions in analyzing CCCDA claim); Mills v. Andover Bank, 1999 WL 1336606 (Mass. Super. 1999) (treating CCCDA and TILA as one in the same). For all essential purposes, the MCCCDA and TILA are the same, and the Bankruptcy Court correctly applied federal TILA law (for which there is far more case law) even though Plaintiffs' claims were pled under the MCCCDA.

1.   ***Since Federal Law Controls, There is No Reason to Certify Any Questions of Law to the Massachusetts Supreme Judicial Court.***

At the beginning of the case, the Fullers agreed that federal law applied to their MCCCDA claims and initially briefed their opposition to Deutsche Bank's motion to dismiss on that presumption. See Plaintiffs Memorandum of Law in Opposition to Deutsche Bank's Motion to Dismiss (Appeal Rec. Doc. No. 4) P.3, n.1. Once the First Circuit decided Melfi v. WMC Mortgage Corp. 568 f.3d 309 (1st Cir. 2009), which dealt a crushing, if not fatal, blow to the Fullers' notice of right to cancel claim, the Fullers did an about face and began arguing that Massachusetts courts would deviate from federal law despite the fact that they had never done so in the past. The Fullers, however, have not cited a single case in which a Massachusetts court has decided an MCCCDA case on any basis other than First Circuit TILA

law.   Therefore, there is no reason whatsoever to certify any question of law to the
Massachusetts Supreme Judicial Court.   Since federal law controls, this brief refers to TILA
and Regulation Z interchangeably with their state counterparts.

### B.      Truth In Lending Background.

The purpose of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et. seq., is "to
assure a meaningful disclosure of credit terms so that the consumer will be able to compare
more readily the various credit terms available to him and avoid the uninformed use of credit,
and to protect the consumer against inaccurate and unfair credit billing and credit card
practices."   15 U.S.C. § 1601(a); see also Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412
(1998) (noting that TILA requires creditors to disclose clearly and accurately all the material
terms of a credit transaction).     While TILA was designed to provide consumers with
meaningful disclosures, it was not enacted to create lender liability for honest, hyper-technical
mistakes.   See McKenna v. First Horizon Home Loan Corp., 475 F.3d 418 (1st Cir. 2007)
(holding Congress did not intend "overwhelming liability for relatively minor violations [of
TILA]").   In fact, Congress amended TILA in 1995 with the specific intent of providing even
greater tolerance for disclosure mistakes.   Id. at 424 ("Congress proceeded to amend TILA to
provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure
obligations."); Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12 (1st Cir. 2007)
(noting "[m]ost courts have concluded that TILA's clear and conspicuous standard is less
demanding than a requirement of perfect notice").

When Congress amended TILA in 1995, it did so to address and alleviate the

"devastating liability that threatens our housing finance system..."  <u>See</u> 145 Cong. Rec. 4566, 14567 (Sept. 28, 1995) (statement of Sen. D'Amato).  And, it did so in response to an influx of rescission claims based on technical mistakes just like the one before this Court.  Senator D'Amato explained, "[t]he majority of these suits demanded the most draconian remedy available under Truth-in-Lending – rescission."  <u>Id.</u>  Then, as is the case now, tolerance for minor violations was "critical to avert what could be a financial disaster in the mortgage industry."  <u>Id.</u> at 14568 (Sept. 28, 1995) (statement of Sen. Mack).

### C.    The "Objective Reasonableness" Standard.

In <u>Palmer v. Champion Mortgage</u>, the First Circuit cognizant of Congress's intent, first articulated the objective reasonableness standard by which the contents of notices of right to cancel are reviewed in the First Circuit.  <u>See</u> <u>Palmer v. Champion Mortgage</u>, 465 F. 3d 24 (1st Cir. 2006).  In <u>Palmer</u> this Court established:

> The emphasis is on <u>objective reasonableness</u>, rather than the subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer--a consumer who is neither particularly sophisticated nor particularly dense [citations omitted] ... Thus, we turn to the question of <u>whether the average consumer, looking at the Notice objectively, would find it confusing</u>...

<u>Id.</u> (emphasis added).    The First Circuit repeated its objective reasonableness standard and applied it again in <u>Melfi v. WMC Mortg. Corp.</u>, 568 F.3d 309, 312 (1st Cir. 2009) "Our test is whether any reasonable person, in reading the form provided in this case, would so understand it."  Not surprisingly, <u>Melfi</u> and <u>Palmer</u>, the controlling precedent, are relegated to a footnote at the end of the portion of Plaintiff's brief, which sets out the applicable standard of

review.

1.   *The Fullers Incorrectly Rely on the Hyper-Technical Standard Use in Other Circuits.*

Notwithstanding that the First Circuit has spoken loud and clear on the objective reasonableness standard, the Fullers cast their argument against the hyper-technical standard used in other circuits, which has been expressly rejected by the First Circuit. See Appellant's Brief, Part II, Page II; Melfi, at 312 (rejecting hyper-technical standard). Indeed, the Fullers' entire argument is premised on the case law and decisions from other circuits where hyper-technicality reigns. See Semar v. Plant Valley Fed. Savings & Loan Assoc., 791 F. 2d 699 (9th Cir. 1986); Williamson v. W.E. Lafferty, 698 F. 2d 767 (5th Cir. 1983).[9]   The First Circuit has rejected the Semar and Williamson line of cases as "elderly" and comment that they may be in tension with other TILA amendments. Melfi, at 312.

**D.   Review of Recent Notice of Right to Cancel Cases.**

A wealth of recent First Circuit cases deal with variations of the notice of right to cancel fact pattern. For example, in Palmer v. Champion Mortgage, a borrower sought to rescind a loan based upon an allegedly confusing notice of right to cancel. In that case, the notice of right to cancel (which is substantively identical in form to the one at issue in this case) stated that the borrower had the right to cancel within three business days from whichever of the following events occurs last:

(1)   the date of the transaction, which is MARCH 28, 2003;
(2)   the date you received your Truth-in Lending disclosures; or
(3)   the date you received this notice of your right to cancel.

---

[9] Since the First Circuit rejected these cases by name in Melfi, the Fullers cite other hyper-technical cases from other circuits in an attempt to have this court rely on a rejected hyper-technical standard.

The notice further provided that the notice to cancel "must be sent no later than midnight of April 1, 2003 (or midnight of the third business day following the latest of the three events listed above)." The borrower, however, did not receive the form until after April 1, 2003. Thus, the borrower claimed that the notice was confusing because the form indicated that the cancellation period expired before she got the notice. The Court applied the "objective reasonableness" standard and reviewed the disclosure "from the vantage point of a hypothetical average consumer." The Court could not understand how a reasonably alert person could be drawn to the erroneous expiration date without also reading the twice stated alternative deadlines. Id. at 28-29. Thus, the First Circuit affirmed the district court and held that the notice was clear and conspicuous despite failing to include the accurate date that the rescission period expired.

More recently, the First Circuit decided a similar notice of right to cancel issue in the lender's favor on a motion to dismiss in Melfi v. WMC Mortgage Corp., 568 F.3d 309, 310 (1st Cir. 2009). Melfi involved a fact pattern similar to Palmer (and more like this case), but in Melfi the borrower alleged that the notice of right to cancel provided to him at closing omitted both the date of the transaction and the date of the actual deadline to rescind. Id. As a result, the borrower argued that the notice of right to cancel did not comply with TILA and Regulation Z. The First Circuit affirmed the district court's dismissal of the plaintiff's claims relying heavily on Palmer and applying the objective reasonableness standard. Rejecting the hyper-technical standard, the Court noted "technical deficiencies do not matter if the borrower receives a notice that effectively gives him notice as to the final date for rescission and has the

three full days to act." Id. at 312.   The Court noted that any borrower who actually attended his closing and received the notice of right to cancel (with blank dates fields) at closing, would objectively been on notice of his three day cancellation right.   Therefore, the First Circuit again ruled that a technical violation regarding the dates on the notice of right to cancel did not give a borrower extended rescission rights.

### E.   Massachusetts Federal Court Decisions Also Compel Dismissal.

Other Massachusetts federal courts have also weighed in on similar notice of right to cancel cases and have sided with the lender.   In Reynolds v. E-Loan, Inc. 2008 U.S. Dist. LEXIS 94844 (D. Mass. Nov. 18, 2008), like Melfi, the borrowers alleged that their notices of right to cancel omitted both the date of the transaction and the date of the expiration of the rescission period.   Id. at *2-3.   Although Judge Woodlock denied the defendants' motion to dismiss, his reasoning follows Palmer and validates its progeny.   Reynolds differs from the case at bar because the operative dates on the notices were based on the "opening date of the account" and not the date of the transaction.   Judge Woodlock reasoned that while an average consumer who attends his loan closing would know the date of the transaction (and therefore be able to "easily" discover the rescission deadline) he would not have any way of knowing the date the account was "funded."   Id. at *16-18.   Judge Woodlock specifically noted that there would be "a different result" if the notice of right to cancel was based on the transaction date and not the date of the funding.   Id. at *21-23.

Judge Saylor decided Omar v. Wash. Mutual Bank, 2008 U.S. Dist. LEXIS 107284 (D. Mass. Dec. 30, 2008) and Quiles v. Wash. Mutual Bank, 2008 U.S. Dist. LEXIS 107279

(D. Mass. Dec. 30, 2008), which involved similar notice of right to cancel facts, on the same day. In those cases, the borrowers each received notices of right to cancel, which omitted both the date of the transaction and the date of the expiration of the rescission period. See Omar, at *2-3; Quiles, at *2-3. Following the district court decisions before him, Judge Saylor applied the Palmer objective reasonableness standard to each of the notices of right to cancel. Consistent with First Circuit precedent and other district court judges, Judge Saylor concluded that "an average borrower in the position of the borrower here--even when provided a so-called "blank" form--could have easily ascertained the rescission period." Omar, at *12; Quiles, at *12. The district court then echoed Congress' 1995 TILA Amendment intent by noting:

> It is absurd to suggest that minor defects in the notice justify application of the extreme remedy of rescission. Moreover, requiring rescission on these facts would create perverse incentives. It would encourage borrowers to sit on their rights for years, in effect giving them an option out of their loan obligations at any point up to the expiration of the statute of limitations. Congress did not intend such a result, and the Court sees no reason to permit it here.

Id. at *18-29. This commentary is particularly applicable to this case given Plaintiffs' rescission attempt nearly five years after their mortgage.

Based on Palmer and its progeny, and now Melfi, and its progeny[10] Plaintiffs' claims are due to be dismissed because any objectively reasonable consumer who received the Fullers' notices of right to cancel and attended their loan closing could easily determine the date that their rescission period began and expired.

**F.      Framing the Notice of Right to Cancel Issue in this Case.**

---

[10] See Dimare v. Ameriquest Mortgage Co., 2009 Bankr. LEXIS 4208 (Bankr. D. Mass 2009) (granting summary judgment to lender on MCCCDA/TILA rescission claims where notices of right to cancel were blank and inconsistent).

There is no dispute that the Fullers received notices of right to cancel in this case. Indeed, the Fullers contend that the notices that they were given were defective because the date of transaction was off by one day and because the actual deadline to rescind was not filled in. Thus, their claims are very similar to the claims in Melfi, which notices also omitted the actual rescission expiration date, but add the slight factual change that the transaction date was one day off. The United States Court of Appeals for the First Circuit and First Circuit district courts have routinely rejected such claims and have held that disclosures omitting such information are not ineffective or illegal. See Parts I. D and E, supra. It is against this First Circuit backdrop of accepting honest yet incomplete or incorrect notice of right to cancel disclosures, that the Fullers assert their claims.

### G. Omission of the Actual Date That The Rescission Period Expires Does Not Render Notice Of Right To Cancel Inadequate.

Plaintiffs rely on a hyper-technical alleged omission from the Notice of Right to Cancel – the absence of the date that the cancellation period expires. The form attached to the Amended Complaint provides:

> If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above).

Am. Compl., Ex. A and B. With respect to the omission of the cancellation deadline, this case presents is precisely the same issue decided in Melfi. The First Circuit has unequivocally held that any reasonable person who actually attends his loan closing would be able to determine when the three day cancellation period expires even though the actual expiration date is not filled in on the notice of right to cancel itself. Therefore, the omission of the rescission

deadline on the notice of right to cancel cannot, as a matter of First Circuit law, render the Fullers' notices invalid.

The Fullers attempt to distinguish this case from <u>Melfi</u> on the grounds that the transaction date provided on the notices of right to cancel allegedly provided to the Fullers was one day before the actual closing.  This incorrect transaction date argument is unavailing for several reasons.  First, even if the date of the transaction was inaccurate by one day, it had absolutely no practical effect of misleading because the Fullers did not attempt to exercise their rescission rights until nearly *five years* after the closing.  Thus, the *one-day* discrepancy had no impact on the Fullers' calculation of the *three-day* rescission period.  Second, the notice of right to cancel form clearly and repeatedly refers to the alternative dates upon which the three-day cancellation period begins to run.  The form provides in relevant part:

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on your home.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.    the date of the transaction, which is 08/11/03; or
2.    the date you receive your Truth in Lending disclosures; or
3.    The date you received this notice of your right to cancel.

<div align="center">*    *    *</div>

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above)...

Thus, the rescission period starts to run on the *later* of the date of the transaction, the date of the TILA disclosure, or the date of receipt of the notices of right to cancel.  Since the Fullers

argue that they received the notice at the closing which took place on the 12th rather than the 11th, the rescission period would not have started running until the 12th - the day the Fullers received the notices. Therefore, even if the Fullers had been drawn to the incorrect transaction date (which is not the case here), they would have also seen the twice repeated alternative rescission period triggers. See Palmer v. Champion Mortgage, 465 at 21-22 (noting the court looking at the disclosure "from the vantage point of a hypothetical average consumer" could not understand how a reasonably alert person could be drawn to the erroneous expiration date without also reading the twice stated alternative deadlines). Third, as noted by one Massachusetts District Court Judge, it is unquestionable that reasonable consumers who actually attend their loan closing would know the date of their loan transaction. See Reynolds v. E-Loan, Inc., 2008 U.S. Dist. LEXIS 94844 (D. Mass. Nov. 14, 2008) (noting "the date of the loan closing, [is] an event for which the consumer will necessarily be present, either in person or through a designated agent. In this respect... the average consumer will either have personal knowledge of the correct date or could easily discover it"). In this case, the Fullers attended their closing and received notices of right to cancel. Any reasonable consumer in the Fullers' position would have known precisely when the rescission period began to run based on the terms contained within the disclosure regardless of whether the date of the transaction was off by one day.[11] This is especially the case where the Fullers did not attempt to rescind the loan until nearly five years later.

---

[11] On page 29 of their initial brief, Plaintiffs raise the "business day" argument. A business day is surprisingly defined to include Saturdays under Regulation Z. This admittedly counterintuitive definition has been used by borrowers as an argument as to why the omission of the cancellation deadline date has a confusing effect on the borrower. The business day argument is a red herring (even if accepted) in this case because the transaction took place on a April 12, 2003, which was a Tuesday. The three day rescission period would have expired on Friday. Therefore, the inclusion of Saturday as a "business day" by definition would have had no impact on the Fullers notice of right to cancel. Nor could it have reasonably misled a borrower where they did not assert rescission claims

Based on Palmer and its progeny, and Melfi and its progeny, the Fullers' MCCCDA claim fails as a matter of law and Deutsche Bank was properly granted summary judgment because any objectively reasonable consumer who received the alleged notices of right to cancel and attended their loan closing could have easily determined the date that their rescission period began and expired.

## III. WHILE THE BANKRUPTCY COURT DID NOT ANALYZE THE FULLY AND ACCURATELY COMPLETED NOTICES OF RIGHT TO CANCEL SIGNED BY THE FULLERS AT CLOSING, IF IT HAD DONE SO, IT COULD ALSO HAVE GRANTED SUMMARY JUDGMENT TO DEUTSCHE BANK.

Notwithstanding the fact that the Fullers admit receiving the incomplete notices of right to cancel, the Fullers also admit that they each signed and thereby acknowledged receipt of two fully and correctly completed Notices of Right to Cancel at their loan closing. The Bankruptcy Court, however, did not analyze this issue because it found that even the Fullers' incomplete and technically inaccurate version of the notices of right to cancel complied with the MCCCDA. See Memo of Decision, Page 4. As such, the Fullers' argument which begins by questioning the legitimacy of the fully, correctly completed and signed copies of the notice of right to cancel, completely misses the mark from the outset. The Court, however, could have considered the fully executed copies of the Notices of Right to Cancel in Deutsche Bank's possession which accurately state the date of the transaction (August 12, 2003 – albeit by hand revision) and the date that the rescission period expired (August 15, 2003) on notices. (SOF 4). Directly above the signature line, in all capital letters, the Fullers expressly certified by signing that:

ON THE DATE OF THE TRANSACTION LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF

for five years.

THE NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION

Pursuant to M.G.L. c. 140D, § 10(c) the Fullers signed acknowledgement creates a rebuttable presumption that the lender provided the required notice. See M.G.L. c. 140D, § 10(c) ("Written acknowledgment of receipt of any disclosures required under this chapter, or any rule or regulation issued thereunder, by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."). Thus, Deutsche Bank was entitled to a *presumption* that the fully and correctly completed form was delivered to the Fullers.[12]

To combat the presumption of delivery, the Fullers attempt to argue that the forms were altered by someone post closing and base this allegation of fraud on the fact that they do not recall seeing the corrected date or the expiration deadline on the form at closing. Given the Fullers admitted unclear memory and their inability to remember even though must basic details of their loan closing (including where the closing took place), it is inconceivable how they can say with certainty that the form must have been changed by somebody after the closing. Indeed, this accusation falls short of even pleading, let alone providing evidence to support, a claim of fraud. The Fullers can adduce no credible material evidence sufficient to

_____

[12] The Fullers attempt to rebut the delivery presumption by positing that since the fully competed notices of right to cancel are not in their personal file, they must not have been provided to them by the original lender. The Fullers position has too many holes to be accepted to overcome summary judgment. First, the Fullers have provided their "original loan documents" to as few as four attorneys/credit counseling agencies over the past 6 years, each of which disassembled the documents, made copies of the documents, and reassembled the documents before returning the documents to the Fullers. (SOF 26). Thus, the Fullers cannot establish a valid chain of custody that could establish that their documents have not been misplaced, lost, or not returned to them. Second, one of the individuals who received and review the Fullers loan documents was Attorney Kurland, who represented the Fullers on issues pertaining to their mortgage. Attorney Kurland, however, never even so much as suggested that the Fullers had rescission claims in the First Bankruptcy. (SOF 16). One can easily infer that such as obvious disclosure omission would have been readily apparent to an attorney that representing the Fullers on issues directly related to their mortgage.

defeat the presumption of delivery of the fully completed forms.   Therefore, the Bankruptcy Court could have granted summary judgment to Deutsche Bank based on the correctly completed notices of right to cancel, which Plaintiffs signed and acknowledged receiving at closing.

## IV.   THE ORIGINAL LENDER MADE ALL REQUIRED HIGH COST MORTGAGE LOAN DISCLOSURES.

The Bankruptcy Court correctly granted summary judgment on Count II, the Fullers' high cost mortgage disclosure claim, because the Fullers signed and received all required high cost mortgage loan disclosures, and the Fullers cannot adduce any evidence that the disclosures were not timely.   The Fullers contend that the originating lender failed to disclose the information required by 209 CMR 32.32(3)(f)(1) and (2).   Under section 32.32(3)(f)(1) the lender must disclose the following in a high cost mortgage loan application:

> ..."The loan which will be offered to you is not necessarily the least expensive loan available to you and you are advised to shop around to determine competitive interest rates, points, and other fees and charges."

Further, under section 32.32(3)(f)(2):

> At or prior to taking an application, a creditor must also deliver, place in the mail fax or electronically transmit to the borrower a statement in substantially the following form: "Although your aggregate monthly debt payment may decrease, the high cost mortgage loan may increase both (a) your aggregate number of monthly debt payments and (b) the aggregate amount paid by you over the term of the high cost home loan if such are likely the case....

Under both subsections (1) or (2), the lender can make the referenced disclosures *after* the application if the creditor does not know that the application is a high cost loan application. See 209 CMR 32.32 (f)(1) and (2).[13]   There is no question that the Fullers were actually given all high cost loan disclosures.   The Fullers' argument – that the required statement was not

---

[13] This point is critical to showing why the Fullers' argument on appeal fails.

printed on the application above their signature block – is not compelling because there is no indication that the loan was a high cost loan at the time of the application.

The Fullers' acknowledged receiving and reading the high cost mortgage loan application disclosure by signing the Massachusetts High Cost Mortgage Loan Application Disclosure at their closing.  The disclosures clearly and conspicuously state in 12 point, bold font, the verbatim language required under subsections 32.32(3)(f)(1) and (2).  Id.  Because there is no evidence to even suggest that the Fullers' loan application was a "high cost mortgage loan application" at the time of submission, the referenced disclosures were not immediately required.  The Fullers testified at their depositions that they received some "documents" from the originating lender both prior to the loan closing, at the loan closing, and after closing, but that they could not recall when the received the various documents from the lender. (SOF 5).  During discovery, the Fullers produced unsigned copies of the allegedly not provided high cost home loan disclosures.  (SOF 28).  And, David Fuller admitted in his deposition, that the Fullers were given and signed "documents" prior to their loan closing. (SOF 27). Thus, given the fact that the Fullers certified that they received the required disclosures at closing, actually had the unsigned disclosures in their possession, and cannot state when they received each of the documents in their possession, they are unable to satisfy their burden of demonstrating that the high cost loan disclosures were not timely provided to them.  The Bankruptcy Court correctly ruled that the Fullers could not overcome Deutsche Bank's evidence of complete disclosure.

**V.     THE BANKRUPTCY COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO DEUTSCHE BANK ON PLAINTIFFS' G.L. c. 93A CLAIM BECAUSE DEUTSCHE BANK'S REJECTION OF PLAINTIFFS' RESCISSION**

**REQUEST WAS NOT "UNFAIR OR DECEPTIVE."**

The Bankruptcy Court correctly granted summary judgment to Deutsche Bank on the Fullers' 93A claim because the underlying statutory claims (upon which the 93A claims is based) all fail. However, even if the Bankruptcy Court had not granted summary judgment to Deutsche Bank, Deutsche Bank's refusal to immediately honor the Fullers' rescission request does not violate Chapter 93A. The Fullers 93A claim is premised solely and entirely on the allegation that Deutsche Bank refused to immediately honor and effectuate the Fullers' rescission requests. The Fullers contend that Deutsche Bank's rejection of their rescission request was "unfair or deceptive" under M.G.L. c. 93A, § 2, 9. This claim must fail for several reasons.

**A.     Refusal to Honor the Fullers' Rescission Request is Not Unfair or Deceptive.**

Deutsche Bank's conduct was not "unfair or deceptive" under Chapter 93A because the Fullers' asserted basis for rescission was directly contradicted by the disclosures that Deutsche Bank had in its loan file.  In reviewing whether conduct is unfair or deceptive a Court should look at the context and circumstances of the alleged conduct.  See Cummings v. HMG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001); Kattar v. Demoulas, 433 Mass. 1, 13-13 (Mass. 2000). In this case, the context and circumstances of Deutsche Bank's rejection is telling because the Fullers' rescission requests fail to adequately identify the grounds for rescission.  The March 17, 2008 correspondence sent by Attorney Quat on behalf of the Fullers fails to identify with any specificity the grounds on which rescission was sought.  Attorney Quat merely recited that "the Fullers have the right to rescind the transaction by way of recoupment as a defense to

foreclosure" and that "each is exercising his/her right to rescind ... because the material disclosures required to be made pursuant to section 12 were inaccurate beyond any tolerances permitted by law." The cited section 12, however, does not include the grounds for rescission that the Fullers pursue in this case. Indeed, Section 12 deals with the form disclosure of the annual percentage rate and finance charge - claims not raised by the Fullers in this case. As such, it cannot be deemed unfair or deceptive for Deutsche Bank to have rejected the Fullers' rescission request on Section 12 grounds.

The Fullers' counsel sent a supplemental rescission request on April 1, 2008 purporting to state "additional grounds" for rescission. In that letter, the Fullers added that the notices of right to cancel that they received did not specify the expiration date of the rescission period. The Fullers did not, however, attach the purportedly incomplete notices of right to cancel to their request. As a result, Deutsche Bank rejected the rescission attempt relying on the fact that the notices of right to cancel in its possession were fully and accurately completed. Therefore, Deutsche Bank's denial of the Fullers' rescission requests was not only not unfair or deceptive, but was actually based on sound documentary evidence in its possession.[14]

## B.      A Good Faith Dispute Over the Sufficiency of the Notice Is Not Grounds for a 93A Claim.

While Deutsche Bank maintains that its reliance on the signed disclosures is an appropriate and valid grounds to avoid liability under chapter 93A, the parties could be said to have been in a good faith dispute over the sufficiency of the disclosures. A good faith dispute, however, does not rise to level of actionable conduct under chapter 93A. See Spence v.

---

[14] The Fullers' claim that they did not receive certain high cost home loan disclosures was not included in their rescission request at all. Therefore even if the Fullers could survive summary judgment on their high cost home loan rescission claim, it cannot be the basis for the liability under 93A

Berkshire Life Ins. Co., 561 F. Supp. 2d 126, 130-31 (D. Mass. 2008) (quoting Duclersaint v. Fed. Nat'l Mortgage Ass'n, 427 Mass. 809, 814 (Mass. 1998) ("... a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made.'").  Therefore, even if the parties had a good faith dispute over whether performance of rescission was warranted, such conduct is not actionable under 93A.

C.    **The Fullers' 93A Claim is Incorrectly Premised on the Notion that a Rescission Request Immediately and Automatically Terminates the Mortgage.**

The Fullers' 93A claim is wrongfully premised on the notion that a notice of rescission, regardless of whether it is challenged by the holder, immediately and automatically voids the contract and terminates the security interest.  The Fullers' position was expressly rejected by the United States District Court for the District of Massachusetts in Wells Fargo Bank, N.A. v. Jaaskelainen, 2009 U.S. Dist. LEXIS 52163, (D. Mass. May 28, 2009) ("[T]he majority of circuit courts addressing this issue, including the First Circuit, have concluded that rescission does not flow automatically from the borrower's mailing of a notice of rescission); see also Large v. Conseco Fin. Serv. Corp. 292 F.3d 49, 55-56 (1st Cir. 2002) ("Neither [TILA] nor [Regulation Z] establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract."); Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003) (noting argument "makes no sense when, as here, the lender contests the ground upon which the borrower rescinds.").  In this case, it is clear that Deutsche Bank expressly challenged the stated grounds for rescission and therefore the Fullers attempted rescission was not effectuated.  The Fullers contention that the rejection itself (regardless of the

validity of the rejection) is a per se violation, is inaccurate.   For the reasons set forth herein, this Court should affirm the Bankruptcy Court's decision to award summary judgment to Deutsche Bank on the Fullers' 93A claim.

## IV.   THE BANKRUPTCY COURT COULD HAVE (AND PERHAPS SHOULD HAVE) RULED THAT THE FULLERS ARE JUDICIALLY ESTOPPED FROM ASSERTING THEIR CLAIMS IN THIS CASE BECAUSE THEY FAILED TO LIST OR DISCLOSE THEM DURING THEIR FIRST BANKRUPTCY CASE.

Although the Bankruptcy Court did not reach the issue because it ruled that the Fullers' claims failed for other independent reasons, the Bankruptcy could have, and perhaps should have, ruled that the Fullers were judicial estopped from asserting their claims against Deutsche Bank because the Fullers failed to disclose their purported claims in the first bankruptcy case. During that proceeding, which lasted over 3 years, the Fullers certified to the Bankruptcy Court under the pains and penalties of perjury that they held no contingent and unliquidated claims.   They never once amended or altered that position.   Indeed, the Fullers omitted reference to any claims against Deutsche Bank in their First Bankruptcy disclosures, verifying to the bankruptcy court, the trustee, and all creditors (including Deutsche Bank) that no such claims existed.   While they excluded their claims, the Fullers received the continuing benefit of the Bankruptcy Code's protection (including the automatic stay), confirmed and approved a wage earner's plan, negotiated a stipulation with Deutsche Bank with terms favorable to them, and retained their home by avoiding foreclosure.   Because the Fullers failed to disclose any claims against Deutsche Bank in their bankruptcy schedules, and because they successfully relied upon their asserted position to Deutsche Bank's detriment, the doctrine of judicial estoppel now bars them from changing their position and bringing claims against Deutsche

Bank in this matter.

## A.   Judicial Estoppel

Judicial estoppel prevents a party from taking a position in a judicial proceeding that is inconsistent with a stance successfully taken in a previous court proceeding. See Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 61 (1st Cir. 2004) (quoting Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999)); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 228 (D. Mass. 1996) (quoting Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987)).[15] In determining whether the party was successful in a prior proceeding, the court must look to whether the prior forum "accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum." Fleet Nat'l Bank, 375 F.3d at 61 (quoting Gens v. Resolution Trust Corp. (In re Gens), 112 F.3d 569, 572-73 (1st Cir. 1997)).[16] In the First Bankruptcy, the court (along with the trustee and all creditors) accepted the Fullers' repeated certification that they had no claim against Deutsche Bank and that the Mortgage was valid and enforceable. The Fullers, in confirming their Plan without objection, affirmed the Mortgage (and its terms) as a valid lien on the Property. Based upon their certifications and actions, Deutsche Bank engaged in negotiations with the Fullers to resolve an ongoing payment dispute. As a result of these negotiations, the

---

[15] See also Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006); Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 208 (5th Cir. 1999); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988) cert. denied 488 U.S. 967, 109 S. Ct. 495, 102 L. Ed. 2d 532 (1988).

[16] There are two conditions which must be satisfied before the judicial estoppel doctrine may be applied. See Howell v. Town of Leyden, 335 F. Supp. 2d 248, 250 (D. Mass. 2004) (reciting First Circuit precedent). "First, the legal or factual assertion advanced in the earlier judicial proceeding must be 'directly inconsistent' with the assertion made in the current forum." Id. at 250 (citations omitted). "Second, the responsible party must have succeeded in persuading a court to accept its prior position." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) ("the doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system"). In the instant case, both prerequisites have been met.

parties entered into a stipulation to avoid foreclosure on the Property and to further provide the Fullers with ample opportunity to refinance the Mortgage. The position that the Fullers took to secure a beneficial stipulation – that the Mortgage was valid and not subject to rescission - is directly at odds with the position that their adversary case at bar – that the Mortgage is invalid and should be rescinded. Judicial estoppel, however, prevents them from reversing course.

In the bankruptcy context, First Circuit courts have held that judicial estoppel precludes a debtor's affirmative claims where that debtor failed to list or otherwise disclose his claims in a prior bankruptcy. See Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc., 989 F.2d 570, 571 (1st Cir. 1993)[17]; see also Jeffrey v. Desmond, 70 F.3d 183, 186-87 (1st Cir. 1995). Sullivan v. Decision One Mortg. (In re Sullivan), 346 B.R. 4, 32 (Bankr. D. Mass. 2006) (granting summary judgment on lending claims on judicial estoppel grounds). Payless is cited with approval in Jeffrey and Sullivan, particularly for Judge Aldrich's following language:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis. This may not be strictly equitable estoppel, as the court observed. Indeed, defendants may have a windfall. However, it is an unacceptable abuse of judicial proceedings.

---

[17] Courts in other jurisdictions have applied the doctrine of judicial estoppel similarly to Payless. See Stallings, 447 F.3d at 1047 ("a debtor's failure to list a claim in the mandatory bankruptcy filings is tantamount to a representation that no such claim existed."); see also Browning Mfg., 179 F.3d at 208; RTC Mortg. Trust 1995-S/N2 v. McMahon ex rel. McMahon, 1998 U.S. App. LEXIS 12720 (4th Cir. 1998); Oneida Motor Freight, 848 F.2d 416; McCoy v. Am. Union Boiler Co., 2006 U.S. Dist. LEXIS 14781 (S.D. W. Va. 2006); Galerie Des Monnaies of Geneva Ltd. v. Deutsche Bank, 55 Bankr. 253 (Bankr. S.D.N.Y. 1985) aff'd. 62 Bankr. 224 (D.C. S.D.N.Y. 1986). Judicial estoppel has also been applied in Chapter 13 contexts. See Ajaka v. Residential Funding Corp., 278 Fed. Appx. 916, 917 (11th Cir. 2008) (affirming district court ruling barring debtor's claims because debtor failed to disclose them during chapter 13 case); Bohanan v. Bridgestone/Firestone North Am. Tire, LLC, 2007 U.S. Dist. LEXIS 26615, *22 (M.D. Tenn. 2007).

Payless, 989 F.2d at 571; see Jeffrey, 70 F.3d at 186-87; Sullivan, 346 B.R. at 32. A debtor's duty to disclose arises under section 521 of the United States Bankruptcy Code (the "Code"), which requires a debtor to file a schedule of assets and liabilities and a statement of financial affairs. 11 U.S.C. § 521(1). It is well settled that a cause of action is an asset that must be scheduled under § 521(1). See Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004); Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001). Moreover, "[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." Browning Mfg., 179 F.3d at 208 (quoting Youngblood Group v. Lufkin Fed. Savings & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." In re Colvin, 288 B.R. 477, 480-81 (Bankr. E.D. Mich. 2003); see also Browning Mfg., 179 F.3d at 208 ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.") (citing Oneida Motor Freight, Inc., 848 F.2d at 414).

The rationale of Payless (and other cases cited) is sound; comply with the requirements of the Code, disclose assets, participate truthfully in the bankruptcy proceeding, and shed your unsecured debt. Conversely, failure to list or otherwise disclose claims in bankruptcy means that any omitted claims are barred. In this case, the Fullers' had a duty to disclose claims against Deutsche Bank attacking the validity of the Mortgage during the First Bankruptcy. They failed to do so. As a result, they are now precluded from asserting claims challenging

the Mortgage in this matter under any theory.

## B.   The Fullers' Failure to Disclose Claims

The First Circuit squarely addressed the judicial estoppel issue in Payless. The Payless court held that a debtor, which had obtained chapter 11 relief based on its representation that it had no monetary claims other than those listed on its petition, was judicially estopped from subsequently asserting pre-petition claims that were never disclosed during the bankruptcy. Payless, 989 F.2d at 571-72.[18] In Payless, the First Circuit upheld a district court's dismissal of the plaintiffs' claims under a theory of judicial estoppel. The plaintiff in Payless, a wholesale distributor, filed a complaint seeking damages against the defendants based upon allegations of tortuous interference with contracts, among other things. The plaintiff wholesale distributor then filed for bankruptcy but excluded its claims (or putative claims) against the defendants. The First Circuit affirmed the district court's dismissal, holding that the plaintiff's representation that no claims existed barred its claim for relief on the opposite basis. In so holding, the Payless court specifically recognized that a debtor in bankruptcy has an obligation to truthfully disclose its assets once it seeks the protection of the Code. Payless, 989 F.2d at 571. ("The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh."). Similarly to Payless, judicial estoppel is appropriate in the instant case because, like the debtor in Payless who was aware of claims and omitted

---

[18] The Payless court analyzed and applied judicial estoppel in the chapter 11 context, focusing on the debtor's obligations to disclose assets under the Code. Here, the Fullers claim arises in a chapter 13 setting, where the same asset disclosure is required. See 11 U.S.C. § 521(1). Because the asset disclosure requirement is universal under the Code, there is no difference in the application of the Payless rationale in a chapter 11 context versus a chapter 13 context.

them, the Fullers knew or should have known of claims against Deutsche Bank and failed to disclose them.

The Fullers cannot dispute that the claims they presently assert were omitted from the First Bankruptcy. At the time of filing the First Bankruptcy, the Fullers were aware of all facts and circumstances and possessed all of the information upon which they now rely (several years later) to assert their rescission claim.[19] See Salois v. Dime Savings Bank of New York, FSB, 128 F. 3d 20, 25 (1st Cir 1997) (holding claims based on mortgage loan disclosures not entitled to tolling of limitations period because borrowers have all facts needed to ascertain existence of claim). Notwithstanding the facts then known or ascertainable by them, the Fullers (with legal advice) then participated in a chapter 13 bankruptcy that lasted over 3 years, during which the Fullers never disclosed any claims with respect to the origination of the Mortgage. Indeed, during the First Bankruptcy, the Fullers affirmed the validity of the Mortgage when they sought and approved a plan, which was confirmed without objection, and when they entered into a stipulation with Deutsche Bank regarding mortgage payments.

As the holder of the Mortgage, Deutsche Bank retained the ability to foreclose on the Property, and in fact obtained relief from the automatic stay to do so. However, because of the Fullers' verified position, and because of the certifications that they made in their disclosures, Deutsche Bank continually negotiated to resolve the Mortgage payment dispute without taking the steps that would have led to the Fullers losing their home. All told, the Fullers participated in a chapter 13 proceeding for over 3 years, benefited from their inaccurate disclosures during the bankruptcy proceedings, took advantage of the goodwill of creditors

---

[19] The Fullers even gave their bankruptcy attorney copies of all of their mortgage documents. (SOF 16). Thus, not only did the Fullers have all of the documents and information needed to ascertain their purported rescission claims but their attorney in the bankruptcy did as well.

who were willing to negotiate debts and claims with them, and retained their home. After continually representing to the Bankruptcy Court and all creditors that they had no claims against Deutsche Bank in the First Bankruptcy, the Fullers abruptly changed their tack and asserted that the Mortgage was invalid and subject to rescission in the Second Bankruptcy. To allow the Fullers assert these claims now would be patently unfair to Deutsche Bank and permit the Fullers to unjustly benefit from their failure to comply with the Code's disclosure requirements. Judicial estoppel should bar the Fullers' claims and the Bankruptcy Court could have, and should have, so ruled.

## CONCLUSION

For the reasons set forth herein, this Court should affirm the Bankruptcy Court's decision granting summary judgment to Deutsche Bank on each of the Fullers' claims. There is no reason to certify any questions of law to the Massachusetts Supreme Judicial Court as the MCCCDA is consistently without material exception decided based on federal TILA law.

<div style="margin-left:40%">

Respectfully submitted,
Deutsche Bank National Trust Company, as
Trustee for the Registered Holders of CDC
Mortgage Capital Trust 2003-HE4, Mortgage
Pass-Through Certificates, Series 2003-HE4,
By Its Attorneys,

/s/ David Fialkow
David Fialkow (BBO# 666192)
david.fialkow@nelsonmullins.com
Jeffrey Patterson (BBO#671383)
Jeffrey.patterson@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Boston Place
40th Floor
Boston, MA 02108
(617) 573-4700

</div>

## CERTIFICATE OF SERVICE

I, David E. Fialkow, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: February 24, 2010                                    /s/ David E. Fialkow